s

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEADCO PETROLEUM, formerly known as NEW WEST PETROLEUM, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRAFIGURA AG, a Connecticut Corporation, and TRAFIGURA BEHEER B.V., Netherlands Corporation,<br><br>Defendants. | No. 2:12-cv-01446-MCE-JFM<br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Plaintiff, Deadco Petroleum, a California Corporation, filed this lawsuit against Defendants, Trafigura A.G. ("TAG"), a Connecticut corporation, and Trafigura Beheer B.V. ("TBBV"), Netherlands corporation, asserting the following causes of action: (1) Breach of Partnership Contract; (2) Breach of Fiduciary Duty; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violations of Cal. Bus. & Prof. Code § 17200; (5) Fraud; (6) Civil Conspiracy; and (7) Intentional Interference with Contractual Relations.  (ECF. No. 1.)

///

1

1  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint on the
2  following grounds: (1) improper venue under Federal Rule of Civil Procedure 12(b)(3);[1]
3  (2) lack of personal jurisdiction over TBBV under Rule 12(b)(2); and (3) failure to state a
4  claim under Rule 12(b)(6).  For the reasons detailed below, the Court grants Defendants'
5  motion to dismiss Plaintiff's complaint under Rule 12(b)(3) on the ground that all of
6  Plaintiff's claims are subject to the enforceable forum selection clause designating state
7  courts of New York as an exclusive forum for the parties' disputes.[2]  In light of this ruling,
8  the Court does not address Defendants' alternative arguments for dismissal.

## BACKGROUND

12  The facts relevant to Defendants' Rule 12(b)(3) Motion to Dismiss are as follows.
13  Plaintiff alleges that it is a predecessor-in-interest to New West Petroleum ("NWP"), which
14  was in business of purchasing fuel from oil companies at the refinery level and then
15  selling it to fuel companies.  (Compl. ¶¶ 1, 8.)  In early 2007, NWP entered into a Credit
16  Agreement with General Electric Capital Corporation ("GE"), under which GE provided
17  NWP with a loan facility ("GE Loan") of up to $70,000,000.00 to finance NWP's
18  operations.  (Id. ¶ 7.)  As part of the GE Loan, GE would issue Letters of Credit to the oil
19  companies selling fuel to NWP to secure payment for the shipped product.  (Id. ¶¶ 9-10.)
20  In 2007, due to rapidly increasing oil prices and insufficient credit, NWP went into default
21  with GE, and GE requested NWP to replace GE as its lender.  (Id. ¶ 12, 14.)
22  ///
23  ///
24  ///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

2

In July 2007, representatives of NWP and TAG[3] met in California to discuss their business plans and "potential partnership." (Id. ¶ 15.) Subsequently, in October 2007, representatives of TAG, GE and NWP met in California to discuss "the proposed partnership between TAG and NWP," including TAG providing the inventory financing to NWP in place of GE. (Id. ¶ 15.) According to Plaintiff, TAG was interested in utilizing NWP's well-developed distribution system in order to reduce its risk in the market because TAG did not have its own distribution system in the western United States. (Id. ¶¶ 16-17, 19.) In February 2008, TAG and NWP allegedly entered into a "partnership," under the terms of which TAG would purchase the fuel for NWP and bring it to the West Coast for storage, and NWP would then purchase the fuel from TAG and ship it to operating terminals. (Id. ¶ 18.) Under the alleged partnership agreement, TAG was to finance NWP's purchase of inventory from the oil companies, which would allow NWP to free up available credit under the GE Loan that NWP could use to expand its business and would also eliminate NWP's obligation to pay default interest rates and excess fees to GE. (Id. ¶ 18.)

On May 21, 2008, as part of the alleged "partnership" arrangement, TAG and NWP executed a number of documents, including the Product Supply Agreement ("PSA"),[4] regulating the terms of the sale and financing of product and inventory between the parties. (Id. ¶ 22.) The PSA indicates that it is a fully integrated agreement of which modifications must be in writing and signed by all parties to be effective. (Defs.' RJN Ex. A ¶ 22.7.)

///

---

[3] According to Plaintiff, TAG is a subsidiary corporation of TBBV, and TBBV owns more than fifty percent of the issued and outstanding stock of TAG. (Compl. ¶ 4.) Plaintiff alleges that, "at all times mentioned [in the Complaint], each of the Defendants was the agent, servant, representative, and/or partner of each of the remaining Defendants, and in performing the acts herein alleged, was acting within the course and scope of such agency, service, representation, or partnership." (Id. ¶ 5.)

[4] Defendants have filed a request seeking judicial notice of, inter alia, the PSA. (ECF No. 10.) The Court finds that it may take judicial notice of the PSA because this agreement is specifically referred to in the Complaint, (see Compl. ¶¶ 20-24, 26, 27, 30, 37), Plaintiff's claims depend on the PSA's content, and Plaintiff does not dispute the authenticity of the PSA. See Fed. R. Civ. P. 201; Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

Important for the purposes of Defendants' present motion to dismiss, the PSA further provides: "This Agreement shall not be construed as creating a partnership, or joint venture between the Parties." (Id. ¶ 19.1.) (emphasis added).  Finally, the PSA contains a forum selection clause which states:

> Jurisdiction: EACH PARTY HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY STATE COURT LOCATED IN NEW YORK (WITHOUT RECOURSE TO ARBITRATION UNLESS BOTH PARTIES AGREE IN WRITING), AND TO SERVICE OF PROCESS BY CERTIFIED MAIL, DELIVERED TO THE PARTY AT THE MOST RECENT DESIGNATED ADDRESS.  EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION TO PERSONAL JURISDICTION, WHETHER ON GROUNDS OF VENUE, RESIDENCE OR DOMICILE.

(Id. ¶ 17.2.)

Under the original PSA, TAG was to charge NWP interest on the inventory equal to LIBOR plus two percent. (Compl. ¶ 27; RJN Ex. A ¶ 6.2.)  However, on August 14, 2008, TAG arbitrarily increased the interest rate for supplying product to NWP by one-half percent. (Compl. ¶ 27.)  Plaintiff allegedly was "forced to accept TAG's demand under duress and sign an amendment to the [PSA] because NWP had previously . . . transferred and assigned all of its inventory and terminal rights to TAG, and depended on TAG for its fuel supply." (Id. ¶ 28.)  On October 14, 2008, TAG again notified NWP that TAG was increasing the interest rates for financing NWP's inventory. (Id. ¶ 29.)

Subsequently, TAG demanded that NWP pay a minimum monthly fee or a percentage of NWP's monthly profits to TAG and, on December 15, 2008, sent NWP a series of proposed changes to TAG's compensation structure under the PSA. (Id. ¶¶ 30, 32.)  The proposed amendments included the provision requiring NWP to pay TAG an amount equal to the greater of: (1) $250,000.00, or (2) twenty-five percent of NWP's profit, up to a maximum amount of $850,000.00 each month. (Id. ¶ 32.)  NWP protested the proposed amendments on the basis that the increase in fees would jeopardize NWP's existing GE Loan and would likely put NWP into default status with GE. (Id. ¶ 33.)

1  However, TAG "forced" NWP to sign the proposed amendment to the PSA by
2  threatening that it would not issue a Letter of Credit to NWP's contractual partner, BP
3  Products, unless NWP signed the PSA Amendment.  (Id. ¶ 33-37.)
4      TAG's wrongful acts allegedly caused NWP to pay approximately $4,896,000.00
5  more to TAG than the amount required under the initial PSA.  (Id. ¶ 38.)  Additionally,
6  because GE viewed NWP's raised payments to TAG as increasing GE's risk, GE started
7  charging NWP the maximum default interest rates, which caused NWP to pay
8  approximately $5,320,000 in excess interest and fees to GE.  (Id. ¶ 39.)  Finally, as a
9  result of the excessive fees imposed upon NWP pursuant to the PSA Amendment, NWP
10 allegedly was unable to find a new lender to replace GE because no bank was willing to
11 provide financing to NWP.  (Id. ¶ 41.)  A financial advisor hired by NWP determined that
12 the best course of action for NWP would be to market the company for sale.  (Id. ¶ 43.)
13 Plaintiff alleged that NWP would have never considered selling its business but for
14 TAG's wrongful conduct.  (Id. ¶ 44.)  In November and December 2009, NWP began
15 substantive discussions with several potential buyers, including TAG's competitor,
16 Glencore.  (Id. ¶ 45.)  To prevent NWP's sale of its business to Glencore, TAG allegedly
17 threatened to increase the minimum monthly fee charged pursuant to the PSA to
18 $1,000,000.00 per month.  (Id. ¶¶ 46, 52.)  When GE learned of TAG's threat to further
19 increase the minimum monthly fee, GE demanded that NWP accept a sale offer that
20 would close in the shortest time period as opposed to an offer with the highest purchase
21 price.  (Id. ¶ 50.)  Thus, TAG's wrongful conduct allegedly caused NWP to sell its
22 business at a substantial loss.  (Id. ¶ 51.)
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**LEGAL STANDARD**

Parties may by contract designate a forum in which any litigation is to take place. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991). Forum selection clauses selecting a specific venue are mandatory when the parties submit to the "exclusive jurisdiction" of that venue. See Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir.1989) ("[W]here venue is specified with mandatory language, the clause will be enforced."). Federal law applies to determine the enforceability of forum selection clauses in diversity actions. Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988). In this circuit, a motion to dismiss based on the forum selection clause is construed as a Rule 12(b)(3) motion to dismiss for improper venue. Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009). In considering a motion to dismiss for improper venue based on a forum selection clause, "the pleadings need not be accepted as true and the court may consider facts outside of the pleadings." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (internal citations omitted).

If the court determines that a forum selection clause is valid and enforceable, the court may dismiss a case or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). However, a district court must dismiss a case if a valid forum selection clause provides for exclusive jurisdiction in a state court. See In re Atlantic Marine Const. Co., Inc., --F.3d--, 2012 WL 5835832, at *3 (5th Cir. Nov. 19, 2012) ("When the forum-selection clause designates an arbitral, foreign, or state court forum, the federal district court is without power to transfer and thus must dismiss the case as long as it determines the forum-selection clause is enforceable"); Sixty-Two First Street, LLC v. CapitalSource Finance LLC, 2011 WL 2182915, at *3 (N.D. Cal. June 6, 2011) (dismissing case where, pursuant to a valid forum selection clause, venue was proper only in state court).

///

///

## ANALYSIS

Defendants argue that Plaintiff's complaint should be dismissed because it is subject to a valid and enforceable forum selection clause designating state courts of New York as an exclusive forum for the resolution of the parties' disputes. (Defs.' Mot. to Dismiss ("MTD"), ECF No. 9-1, at 11-13.)

Under federal law, forum selection clauses are presumptively valid and should not be set aside unless the party challenging enforcement of such a provision can show it is "unreasonable" under the circumstances. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). A forum selection clause is unreasonable if: (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court;" or (3) enforcement "would contravene a strong public policy of the forum in which suit is brought." Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996). The party seeking to avoid a forum selection clause bears a "heavy burden" to establish that the clause is unenforceable. Bremen, 407 U.S. at 17.

Plaintiff here does not argue that the forum selection clause in the PSA is a product of fraud or overreaching, or that it would be unreasonable or unjust to require Plaintiff to litigate in New York. Instead, Plaintiff argues that the current dispute is not covered by the PSA's forum selection clause because "the foundation of Plaintiff's causes of action lies not in the [PSA], but instead in the overarching partnership relationship of the parties." (Pl.'s Opp'n to MTD, ECF No. 12, at 14.) According to Plaintiff, the PSA's forum selection clause does not apply to Plaintiffs' claims because "TAG's actions in forcing Plaintiff to pay the unconscionable fees were actions done outside of the terms of the [PSA]." (Id. at 15.) Thus, Plaintiff contends, the Court should refuse to apply the PSA's forum selection clause to Plaintiff's tort claims and claims arising out of the alleged "partnership arrangement." (Id.)

Generally, "forum selection clauses can be equally applicable to contractual and tort causes of action." Manatti–Farrow, Inc., 858 F.2d at 514. "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." Id. (holding that the plaintiff's claims for tortious interference with prospective economic advantage and unfair trade practices were within the contract's forum selection clause because those claims "cannot be adjudicated without analyzing whether the parties were in compliance with the contract" and "relate to 'the central conflict over the interpretation' of the contract"). If "the court must resort to the terms of the [contract] to resolve [plaintiff's] claims," those claims are within the scope of a contract's forum selection clause. E. & J. Gallo Winery v. Encana Energy Servs., Inc., 388 F. Supp. 2d 1148, 1162 (E.D. Cal. 2005).

Here, the essence of Plaintiff's Complaint is that TAG wrongfully increased NWP's fees and costs to be charged under the PSA, which caused NWP to incur damages. In particular, in its first three claims for relief,[5] Plaintiff alleges that TAG repeatedly violated the terms and conditions of the "partnership" contract by wrongfully increasing the fees and costs of financing NWP's inventory. (Compl. ¶¶ 58-60, 67-68, 73.) Because the PSA established the parties' rights and duties with respect to TAG's financing of NWP's operations and prescribed the fees to be charged by TAG, the Court will necessarily need to interpret the PSA to determine whether TAG's allegedly wrongful conduct was authorized under the PSA. Additionally, Plaintiff's claim that NWP and TAG entered into an overarching "partnership" agreement runs contrary to the PSA's explicit language providing that the parties' contractual relationship "shall not be construed as creating a partnership, or joint venture between the Parties." (See RJN Ex. A ¶ 19.1) (emphasis added). Plaintiff has failed to provide any evidence demonstrating the existence of the alleged "partnership."

///

---

[5] Plaintiff's first three causes of action are as follows: (1) Breach of Partnership Contract (Compl. ¶¶ 55-63); (2) Breach of Fiduciary Duty (Compl. ¶¶ 64-70); and (3) Breach of Implied Covenant of Good Faith and Fair Dealing (Compl. ¶¶ 71-80.)

Thus, in determining whether the alleged partnership exists in the first place, the Court unavoidably will "need to examine and interpret [the PSA] for evidence of what the parties intended their rights and duties to be." See Modius, Inc. v. Psinaptic, Inc., 2006 WL 1156390, at *7 (N.D. Cal. May 2, 2006).

Plaintiff's remaining claims also arise directly out of the PSA and are based on TAG's allegedly wrongful action of "forcing" Plaintiff into signing the PSA Amendment and then charging excessive fees not authorized under the original PSA.[6] Accordingly, the Court "must resort to the terms" of the PSA to adjudicate Plaintiff's claims. See E & J. Gallo Winery, 388 F. Supp. 2d at 1162. As such, all of Plaintiffs' claims are covered by the PSA's forum selection clause.

Plaintiff relies on E. & J. Gallo Winery in arguing that the Court should refuse to apply the PSA's forum selection clause to Plaintiff's tort claims and claims relating to the parties' "partnership" agreement. (Pl.'s Opp. at 13-14.) Plaintiffs' reliance on E. & J. Gallo Winery is misplaced. In that case, the plaintiffs sued several defendants alleging that defendants and numerous unnamed entities conspired to engage in anticompetitive behavior of fixing natural gas prices in California. Id. at 1155. Plaintiff had a gas supply agreement, containing a forum selection clause, with one of the defendants. Id. at 1163. However, the anti-competitive behavior alleged by plaintiffs "ha[d] nothing to do with the agreement" containing the forum selection clause, and the agreement "d[id] not touch on the factual allegations against Defendants." E. & J. Gallo Winery, 388 F. Supp. 2d at 1162. The agreement "merely identifie[d] Defendants as the parties to be sued among all of the conspirators engaged in [wrongful conduct.]" Id. at 1162-63.

---

[6] Plaintiff's fourth claim for relief, for violations of Cal. Bus. & Prof. Code § 17200, rests exclusively on TAG's allegedly wrongful acts of increasing fees charged to NWP for the inventory financing under the PSA. (See Compl. ¶¶ 82-83). Plaintiff's fifth cause of action alleges that TAG committed fraud "by misleading NWP that it would act in a commercially reasonable manner, and by imposing exorbitant fees and costs, . . . by demanding that NWP share its profits with TAG, and charging NWP a minimum monthly profit sharing fee . . ." (Id. ¶ 88.) The sixth cause of action, for civil conspiracy, alleges that TAG and TBBV "knowingly and willfully conspired and agreed among themselves" to subject NWP to fees and costs in excess of those provided by the initial PSA. (Id. ¶¶ 94-100.) Plaintiff's final cause of action alleges that, by increasing NWP's fees to be paid pursuant to the PSA, TAG wrongfully interfered with NWP's contractual relationship with GE "by causing GE to impose further restrictions upon NWP, including forcing NWP [to] sell all of its business to the first offering party." (Id. ¶ 105.)

In contrast, as analyzed above, all seven of Plaintiff's claims here, including tort claims, are rooted in the PSA itself and the parties' rights and duties under the PSA. None of Plaintiff's claims can be adjudicated without analyzing whether TAG was in compliance with the PSA when it "forced" TAG to pay increased fees. Indeed, Plaintiff's Complaint makes numerous references to the PSA itself, (see Compl. ¶¶ 20-24, 26, 27, 30, 37), and purports to interpret the PSA as prohibiting TAG's alleged conduct.[7] (See Pl.'s Mot. at 14-15.) Thus, because all of Plaintiffs' causes of action "relate to the central conflict over the interpretation of the [PSA], they are within the scope of the [PSA's] forum selection clause." See Manetti–Farrow, Inc., 858 F.2d at 514 (internal quotation omitted).

The only remaining issue for the Court is whether TGGB, which is not NWP's contractual party under the PSA, can enforce the PSA's forum selection clause against Plaintiff. A valid forum selection clause may be enforceable both by contracting parties and others "so closely related" that they "should benefit from and be subject to" the clause. Id. at 514 n.5; see also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1354 (9th Cir. 1990) ("It is not unreasonable or unjust to enforce the [forum selection] clause even though some of [the defendants] did not sign the agreement.").

Here, Plaintiff's claims against TGBB are based on TGBB's alleged actions of conspiring with TAG to impose excessive fees on NWP (see Compl. ¶¶ 94-95), and the fact that TAG and TGBB acted as each other's "agent, servant, representative, and/or partner" (see id. ¶ 5). Because TGBB's alleged conduct is "closely related" to the contractual relationship between TAG and NWP, which is at issue in this litigation, TGBB should be able to enforce the PSA's forum selection clause against Plaintiff. See Manetti-Farrow, Inc., 858 F.2d at 514 n.5.

///

---

[7] In particular, Plaintiff argues that, by demanding excessive fees from NWP, TAG acted contrary to the original PSA which "only permit[ed] TAG to charge Plaintiff for the credit fees, charges, and other costs and expenses incurred by TAG in arranging for . . . Letters of Credit." (Pl.'s Mot. at 14-15.)

In conclusion, it is clear that the PSA's forum selection clause contains mandatory language designating state courts of New York as the exclusive forum for any disputes arising out of the PSA. It is also clear that all of Plaintiff's claims "relate[] to interpretation" of the PSA and cannot be adjudicated without analyzing whether TAG was in compliance with the PSA. See id. at 514. Therefore, all of Plaintiff's claims are subject to the PSA's forum selection clause and should be litigated in state courts of New York. Accordingly, the Court dismisses Plaintiff's Complaint without prejudice.

## CONCLUSION

For the foregoing reasons, the Court finds that venue in this district is improper because all of Plaintiff's claims are subject to the PSA's valid forum selection clause designating state courts of New York as an exclusive forum for the resolution of the parties' dispute. Accordingly, Defendants' Motion to Dismiss under Rule 12(b)(3) is GRANTED and this case is DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated:  December 21, 2012

_____
MORRISON C. ENGLAND, JR
CHIEF JUDGE, UNITED STATES DISTRICT COURT